# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

RACHELLE CRUPI, individually, and as
Special Administrator, Personal Representative,
and heir to the Estate of ALETHA PORCARO,
deceased,

               Plaintiff,

    vs.

The Heights of Summerlin, LLC, *et al.*,

               Defendants.

Case No.: 2:21-cv-00954-GMN-DJA

## ORDER

Pending before the Court is Plaintiff Rachelle Crupi's ("Plaintiff's") Motion to Remand, (ECF No. 18). Defendants The Heights of Summerlin, LLC, Summit Care, LLC, Genesis Healthcare, Inc., Latoya Davis, and Andrew Reese (collectively, "Defendants") filed a Response, (ECF No. 34), and Plaintiff filed a Reply, (ECF No. 42).

Also pending before the Court are Defendants' Motions to Dismiss, (ECF Nos. 5, 6, 10, and 31). Plaintiff filed Responses, (ECF Nos. 16, 19, 28, and 40), and Defendants filed Replies, (ECF Nos. 35, 36, 37, and 44).

For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion to Remand and **DENIES as moot** Defendants' Motions to Dismiss.

## I.    <u>BACKGROUND</u>

This case arises out of the death of Aletha Porcaro from COVID-19 after her inpatient stay at The Heights of Summerlin's skilled nursing facility, ("The Heights Facility"), which primarily treats elderly individuals. (*See generally* Complaint, ECF No. 1-2). On February 15, 2020, Ms. Porcaro arrived at The Heights Facility for post-acute rehabilitation following surgery to repair a fractured femur. (Compl. ¶ 33). On April 13, 2020, The Heights Facility

discharged Ms. Porcaro and transitioned her to a senior-living apartment complex, where she began complaining of pain and discomfort. (*Id.* ¶¶ 121, 127).  On April 14, 2020, Ms. Porcaro started exhibiting COVID-19 symptoms, and she was transported to Summerlin Hospital for a COVID-19 test, which came back positive. (*Id.* ¶¶ 128–129).  On April 21, 2020, Ms. Porcaro was pronounced dead, with COVID-19 listed as the cause of death on her death certificate. (*Id.* ¶ 130).

Plaintiff, Rachelle Crupi, is Ms. Porcaro's daughter, and she filed this case as special administrator, personal representative, and heir to her mother's estate, alleging that Ms. Porcaro contracted COVID-19 during her stay at The Heights Facility. (*Id.* ¶ 1).  Plaintiff claims that Defendants negligently failed to take measures to protect Ms. Porcaro, and the other elderly residents at The Heights Facility, from COVID-19 in violation of their duties under 42 C.F.R. § 483 and NAC § 449. (*Id.* ¶¶ 57–71).  Specifically, Plaintiff claims that The Heights Facility neglected to implement a litany of procedures to reduce the transmission of infectious disease, such as proper infection control practices; policies for the use and disposition of personal protective equipment ("PPE"); screening visitors, employees and new residents for signs and symptoms of COVID-19; policies for quarantining and social distancing; displaying appropriate COVID-19 signage; disinfecting of surfaces and equipment; and reporting COVID-19 cases and deaths. (*Id.* ¶¶ 41, 72–116).  Plaintiff further alleges that reports from the United States Department of Health and Human Services ("HHS"), Centers for Medicare and Medicaid Services and various state agencies revealed deficiencies in The Heights Facility's COVID-19 response. (*Id.* ¶¶ 36–56).

Plaintiff originally filed her Complaint in the Eighth Judicial District Court of Clark County, Nevada, alleging eight causes of action under Nevada state law: (1) Negligence/Negligence *per se*; (2) Negligent Hiring, Training, Retention, and/or Supervision; (3) Abuse and Neglect of an Older/Vulnerable Person; (4) Breach of Contract; (5) Negligent

1    Misrepresentation; (6) Fraud/Intentional Misrepresentation; (7) Wrongful Death; and (8)

2    Professional Negligence. (*Id.* ¶¶ 132–245).  Defendants then removed the case to the United

3    States District Court for the District of Nevada. (Pet. Removal 2:1–4, ECF No. 1).  Defendants

4    allege that this Court has subject matter jurisdiction because Plaintiff's claims are completely

5    preempted by the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C.

6    § 247d-6d(d). (*Id.* 3:10–15).  Plaintiff now moves to remand the case back to state court. (*See*

7    *generally*, Mot. Remand, ECF No. 18).

8    **II.    LEGAL STANDARD**

9         Federal courts are courts of limited jurisdiction, possessing only those powers granted by

10   the Constitution and by statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008).

11   "If at any time before final judgment it appears that the district court lacks subject matter

12   jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).  Generally, district courts have

13   subject matter jurisdiction over civil actions in which: (1) the claims arise under federal law; or

14   (2) where no plaintiff is a citizen of the same state as a defendant and the amount in

15   controversy exceeds $75,000.00. See 28 U.S.C. §§ 1331, 1332(a).

16        A civil action brought in state court may be removed to a federal district court if the

17   district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a).  The defendant

18   asserting the removal must prove it is proper, and there is a strong presumption against removal

19   jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  "Federal jurisdiction must

20   be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (quoting

21   *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

22   **III.   DISCUSSION**

23        Defendants argue that Plaintiff's state law claims are completely preempted by the

24   PREP Act, and thus, the Court has federal question subject matter jurisdiction[1] over this case.

25   _____

[1] Defendants never allege that this Court has diversity subject matter jurisdiction.

(Resp. 3:22–27, ECF No. 34).  The PREP Act provides: "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered counter measure if a declaration . . . has been issued with respect to such a countermeasure." 42 U.S.C. § 247d-6d(a)(1).  In light of the COVID-19 pandemic, the Secretary of Health and Human Services declared a public health emergency and extended the PREP Act's liability immunity to medical countermeasures employed against COVID-19. *See* 85 Fed. Reg. 15198 (March 17, 2020).  Defendants allege both that they are "covered individuals" under the PREP Act and that implementation of an infectious disease program necessarily relies on the use of "covered countermeasures," such as COVID-19 test kits and N95 respirator masks. (Resp. 3:16–21, 6:3–13).  As such, Defendants argue that the PREP Act immunizes them from suit, Plaintiff's state law claims are completely preempted, and jurisdiction in this Court is proper. (*Id.* 3:22–27).

In her Motion to Remand, Plaintiff argues that this case should be remanded because her Complaint alleges only state law claims, and thus, this Court lacks federal question subject matter jurisdiction. (Mot. Remand 5:10–6:6, ECF No. 18).  Further, Plaintiff argues that her claims are not completely preempted by the PREP Act because: (1) the PREP Act is not a complete preemption statute; and (2) Plaintiff's main allegation, that Defendants negligently failed to implement an effective infection control program, is not a "covered countermeasure," and thus the PREP Act does not apply to this case. (*Id.* 10:15–12:18, 13:3–15:16).  Plaintiff clarifies that, while her Complaint does implicate some covered countermeasures, such as N95 respirator masks and other PPE, those countermeasures are only mentioned on a limited basis to

1 demonstrate Defendants' negligence in failing to protect Ms. Porcaro from COVID-19. (*Id.*
2 8:19–10:12).[2]

3         The parties do not dispute that the state law claims alleged in Plaintiff's Complaint do
4 not, by themselves, confer federal question subject matter jurisdiction.  Therefore, the
5 remaining question for the Court is whether federal question subject matter jurisdiction may
6 arise if Plaintiff's state law claims are completely preempted by the PREP Act.  To answer this
7 question, the Court will first address whether the PREP Act is a complete preemption statute,
8 before turning to the question of whether Plaintiff's claims fall within the scope of the PREP
9 Act.

10         **A.  Complete Preemption Under the PREP Act**

11         Under 28 U.S.C. § 1331, district courts have federal question subject matter jurisdiction
12 over "all civil actions arising under the Constitution, laws, or treaties of the United States."
13 This means that a plaintiff may avoid federal question jurisdiction by pleading only state law
14 causes of action in her complaint. *See, e.g.*, *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392
15 (1987).  However, district courts may retain federal question subject matter jurisdiction in cases
16 alleging purely state law claims in limited circumstances where at least one state law claim is
17 completely preempted by a federal statute. *Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115,

18 ───────────────

19 [2] In their Notice of Removal, Defendants proffer Federal Officer Removal as an alternative subject matter
20 jurisdiction to complete preemption. (Pet. Removal 12:10–25:23, ECF No. 1).  Under 28 U.S.C. § 1442(a)(1),
   removal is proper when a defendant is sued for acts undertaken at the direction of a federal officer.  However, in
21 her Motion to Remand, Plaintiff argues that Defendants failed to establish that they were acting under a federal
   officer's directives. (Mot. Remand 15:18–17:16, ECF No. 18).  Because Defendants failed to respond to
22 Plaintiff's arguments concerning federal officer jurisdiction, the Court agrees with Plaintiff that jurisdiction is
   not appropriate under 28 U.S.C. § 1442(a)(1). (*See* Local Rule 7-2(d)) ("the failure of an opposing party to file
23 points and authorities in response to any motion . . . constitutes a consent to the granting of the motion").
   Further, numerous district courts in this district, and throughout the Ninth Circuit, have already found that a
24 nursing home's implementation of a COVID-19 response plan does not confer federal officer jurisdiction. *See,*
   *e.g.*, *Smith v. Heights of Summerlin, LLC*, No. 2:21-cv-01685-JAD-NJK, 2021 WL 5763556, at *6–7 (D. Nev.
25 Dec. 1, 2021); *Ossowski v. St. Joseph Transitional Rehab. Ctr., LLC*, No. 2:21-cv-01417-JCM-BNW, 2021 WL
   4699235, at * 5 (D. Nev. Oct. 6, 2021).

1120 (9th Cir. 2011) ("[T]he district court had subject matter jurisdiction if at least one of [the plaintiff's] claims was completely preempted by the [federal statute].").  The complete preemption doctrine "provides that, in some instances, 'the preemptive force of [federal statutes] is so strong that they completely preempt an area of state law . . . [and] any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002) (quoting *Balcorta v. Twentieth Century—Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000)).

Nonetheless, preemption of a state law claim by any federal statute does not automatically secure federal question subject matter jurisdiction.  "'[I]t is settled law that a case may not be removed to federal court on the basis of a federal defense, including a defense of preemption,' unless 'the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"" *Smith v. Heights of Summerlin, LLC*, No. 2:21-cv-01685-JAD-NJK, 2021 WL 5763556, at *11 (D. Nev. Dec. 1, 2021) (quoting *Caterpillar*, 482 U.S. at 393).  As such, complete preemption is "rare" and has only been endorsed by the U.S. Supreme Court with respect to three federal statutes: § 301 of the Labor Relations Act; §§ 85 and 86 of the National Bank Act; and § 502 of the Employee Retirement Income Security Act. *See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 948 n.5 (9th Cir. 2014).

Since the PREP Act has not yet been endorsed as a complete preemption statute, the Court must employ the Ninth Circuit's two-part test to establish complete preemption.[3]

_____

[3] While many district courts have addressed the question of whether the PREP Act is a complete preemption statute, only one circuit court, the Third Circuit, has addressed the issue. *See Estate of Maglioli v. Alliance HC Holdings, LLC*, 16 F.4th 393 (3d Cir. 2021).  While the Third Circuit did not entirely foreclose the possibility of state law claims being preempted by the PREP Act, in the case of state negligence claims brought against a nursing home's COVID-19 response, it found that complete preemption was not available. *Id.* at 406–413 ("We hold only that (1) the estates' negligence claims based on New Jersey law do not fall under the PREP Act's

"Complete preemption for the purposes of federal jurisdiction under § 1331 exists when Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action." *City of Oakland v. BP PLC*, 969 F.3d 895, 906 (9th Cir. 2020).  Here, Defendants bear the burden of demonstrating that complete preemption applies. *See Hansen v. Crp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2016) ("The removing defendant bears the burden of overcoming the 'strong presumption against removal jurisdiction'") (internal citations omitted); *Ramirez v. Windsor Care Ctr. Nat'l City*, No. 21-cv-01051-AJB-WVG, 2022 WL 392899, at *3 (S.D. Cal. Feb. 9, 2022) ("Defendant bears the burden of demonstrating that the PREP Act applies and completely preempts at least one of Plaintiff's state law claims").

When applying the complete preemption test to the PREP Act, district courts in the Ninth Circuit have almost unanimously[4] found that it is not a complete preemption statute. *See, e.g.*, *Smith v. Heights of Summerlin, LLC*, No. 2:21-cv-01685-JAD-NJK, 2021 WL 5763556, at *6–7 (D. Nev. Dec. 1, 2021); *Ossowski v. St. Joseph Transitional Rehab, Ctr., LLC*, No. 2:21-cv-01417-JCM-BNW, 2021 WL 4699235, at *5 (D. Nev. Oct. 6, 2021). *See also Rae by & through Montisano v. Anza Healthcare Inc.*, No. 21-CV-287-DMS (JLB), 2021 WL 2290776, at *2 (S.D. Cal. June 4, 2021) (collecting cases).  This Court finds no reason to conclude differently.

Defendants allege that the PREP Act is a complete preemption statute under the Ninth Circuit's complete preemption test because the PREP Act provides Plaintiff with two available

---

narrow cause of action for willful misconduct, and (2) the PREP Act's compensation find is not an exclusive federal cause of action triggering removal jurisdiction.").

[4] Only one case, *Garcia v. Welltower OpCo Group LLC*, 522 F. Supp. 3d 734 (C.D. Cal. 2021), has held that negligence claims brought against a senior living facility's COVID-19 response were preempted by the PREP Act.  However, the *Garcia* court failed to assess the Ninth Circuit's complete preemption test, and instead relied solely on Advisory Opinion 21-01 to determine that the PREP Act completely preempted the plaintiff's negligence claims. *Id.* at 741–43.  Thus, this Court finds *Garcia* unpersuasive.

remedies: (1) the PREP Act allows injured individuals to seek compensation from the HHS's Covered Countermeasure Process Fund ("the Compensation Fund"); and (2) the PREP Act provides an injured individual an exclusive federal cause of action for injuries proximately caused by the covered person's willful misconduct, after exhausting administrative remedies through the Compensation Fund. 42 U.S.C. §§ 247d-6e(a) and 247d-6d(d)(1); (Resp. 16:10–17:9). While Defendants may argue that the PREP Act provides a substitute cause of action, they failed to address whether Congress intended the PREP Act to displace a state cause of action.[5] Therefore, Defendants have not met their burden to establish the first prong of the complete preemption test. Numerous other courts have also found that "the PREP Act is an administrative remedy that was created to shield covered persons from liability, not to displace a state-law cause of action." *See, e.g.*, *Smith*, 2021 WL 5763556, at \*12 (citing *Thomas v. Century Villa, Inc.*, No. 2:21-cv-03013-MCS-KS, 2021 WL 2400970, at \*4 (C.D. Cal. June 10, 2021). *See also Estate of Maglioli*, 16 F.4th at 411–12 (finding that the Compensation Fund is not a cause of action, and thus cannot be used to establish the PREP Act as a complete preemption statute).

Defendants also failed to meet their burden to demonstrate that the PREP Act provides a substitute cause of action. When assessing whether a federal statute may result in complete preemption, courts look to whether the plaintiff may instead bring her state law claim under the federal statute's substitute and exclusive cause of action. *See Estate of Maglioli v. Alliance HC Holdings, LLC*, 16 F.4th 393, 410–11 (3d Cir. 2021) ("we must determine whether [the

---

[5] Defendants fervently assert that Advisory Opinion 21-01 from HHS General Counsel confirms that the PREP Act should be a complete preemption statute. (Resp. 13:5–16:9, ECF no. 34). However, an agency advisory opinion does not demonstrate that *Congress* intended the PREP Act to displace state causes of action. Defendants further argue that "where Congress has expressly delegated interpretive authority to an agency, the agency's interpretative proclamations are controlling on the federal courts." (*Id.* 15:7–19) (citing *Chevron, USA, Inc. v. Natural Resources Defense Counsil, Inc.*, 467 U.S. 837, 843–44 (1984)). However, "deference is not owed [here] for the simple reason that HHS is not delegated authority under the PREP Act to interpret the scope of the court's jurisdiction." *Estate of Maglioli*, 16 F.4th at 403.

plaintiffs] could have brought their [negligence] claims under the PREP Act's cause of action for willful misconduct").  Here, Defendants identify the PREP Act's exclusive cause of action for willful misconduct as a substitute cause of action, but do not illustrate how Plaintiff could have brought her state law negligence claims under it.  Further, since willful misconduct and negligence are separate claims, it is unlikely that Defendants would have been able to illustrate this even if they had attempted to do so. *See id.* (finding that the PREP act does not provide a substitute for the plaintiffs' negligence claims because willful misconduct is an "entirely difference cause of action"); *Smith v. Colonial Care Center, Inc.*, No.2:21-cv-00494-RGK-PD, 2021 WL1087284, at *5 (C.D. Cal. Mar. 19, 2021) ("the PREP Act does not provide Plaintiffs with an exclusive federal cause of action that covers [non-willfulness] claims").

Accordingly, Defendants have not met their burden to overcome the strong presumption against removal because they demonstrated neither that Congress intended the PREP Act to displace a state-law cause of action, nor that it provides a substitute cause of action. *See City of Oakland*, 969 F.3d at 906; *Ramirez*, 2022 WL 392899, at *13–14 (citing *Hansen*, 902 F.3d at 1057).  As such, Court finds that the PREP Act "does not present the 'rare' case of a complete preemption statute." *Ramirez*, 2022 WL 392899, at *13–14.

### B.  Scope of the PREP Act

Assuming, *arguendo*, that the PREP Act could somehow lead to complete preemption of state law claims, the Court would still find that Plaintiff's claims do not fall within the scope of the PREP Act.  Plaintiff argues that the PREP Act is not implicated by her Complaint because the Complaint does not allege that Ms. Porcaro's death resulted from Defendants' use of a covered countermeasure, but rather that "Defendant[s] failed to follow or implement an infection control program and failed to adhere to local and state guidelines on COVID-19." (Mot. Remand 10:14–17).  The Court agrees.

The PREP Act provides:

> (1)     In general. Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure . . .

> (2)(B) Scope. The immunity under paragraph (1) applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.

42 U.S.C. §§ 247d-6d(1)–(2)(B).  Therefore, scope of immunity under the PREP Act is limited to any claim or loss related to the administration or use of a *covered countermeasure* by a *covered person*.  In the present case, the Court must assess whether the Complaint alleges that Ms. Porcaro's death occurred from the use of covered countermeasures and whether Defendants are covered persons under the PREP Act.

### 1.     Covered Countermeasures

Covered countermeasures include:

> (A)     a qualified pandemic or epidemic product (as defined in paragraph (7));

> (B)     a security countermeasure (as defined in section 319F-2(c)(1)(B) [42 USCS § 247d-6b(c)(1)(B)]);

> (C)     a drug (as such term is defined in section 201(g)(1) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 321(g)(1)), biological product (as such term is defined by section 351(i) of this Act [42 USCS § 262(i)]), or device (as such term is defined by section 201(h) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. 321(h)) that is authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug, and Cosmetic Act [21 USCS § 360bbb-3, 360bbb-3a, or 360bbb-3b]; or

(D)     a respiratory protective device that is approved by the National Institute for Occupational Safety and Health under part 84 of title 42, Code of Federal Regulations (or any successor regulations), and that the Secretary determines to be a priority for use during a public health emergency declared under section 319 [42 USCS § 247d].

42 U.S.C. §§ 247d-6d(i)(1)(A)–(D).

For the purposes of the COVID-19 pandemic, the HHS further defines covered countermeasures as:

[A]ny antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . or any device used in the administration of any such product, and all component and constituent materials of any such product.

Covered Countermeasures must be "qualified pandemic or epidemic products," or "security countermeasures," or drugs, biological products, or devices authorized for investigational or emergency use, as those terms are defined in the PREP Act, FD&C Act, and the Public Health Service Act.

85 Fed. Reg. 15198 (March 17, 2020).  Here, the parties do not dispute that COVID-19 test kits, N95 respiratory masks, and other PPE qualify as covered countermeasures under the PREP Act.  The parties merely dispute whether the Complaint alleges that the use of covered countermeasures caused the death of Ms. Porcaro.

As stated above, Plaintiff's Complaint alleges that Defendants negligently failed to enact a policy to combat the spread of COVID-19 at The Heights Facility during Ms. Porcaro's residency. (*See* Mot. Remand 8:1–6)  To provide an example of Defendants' negligence, the Complaint broadly alleges that Defendants failed to enact policies for the use and disposition of PPE, such as N95 respirator masks, and to properly test residents for infectious disease,

presumably using COVID-19 test kits.[6] (Compl. ¶¶ 75, 80, 82, 85, 88, 90, 92).  Because the Complaint implicates the use of PPE and COVID-19 test kits, Defendants argue that Plaintiff alleges that Ms. Porcaro's death resulted from Defendants' use of covered countermeasures. (Resp. 11:6–7).  To the contrary, Plaintiff claims that the failure to implement an effective infection control program is not a covered countermeasure. (Mot. Remand 10:13–14).

Under the plain language of the PREP Act, the Court agrees with Plaintiff that an infection control program or COVID-19 response policy is not a covered countermeasure.  To put it simply, a program or policy is not a product, drug, or device. 42 U.S.C. §§ 247d-6d(i)(1)(A)–(D).  The question remains though of whether the implementation of covered countermeasures into a COVID-19 response policy falls within the PREP Act's scope.

Courts in this circuit have found that "the plain language of the PREP Act does not provide immunity for the administration of covered countermeasures *generally*." *Ramirez*, 2022 WL 392899, at \*4.  Instead, PREP Act immunity applies specifically to the "the administration to or the use by an individual of a covered countermeasure." *Id.* (citing 42 U.S.C. § 247d-6d(a)(1)).  Here, the Complaint does not connect Ms. Porcaro's death specifically to the administration or use of a covered countermeasure.  In fact, the Complaint sparsely mentions covered countermeasures at all, and not once in any of the eight causes of action. (*See* Compl. ¶¶ 132–245).  The Complaint merely alleges that Defendants failed to implement a COVID-19 response policy, which includes the use of PPE generally.  In other words, the fact that the Complaint mentions some covered countermeasures as examples of Defendants' failure to enact a COVID-19 response policy, does not rise to the level of alleging that Ms. Porcaro's death was specifically caused by Defendants' use (or misuse) of covered countermeasures. *See, e.g.*, *Ramirez*, 2022 WL 392899, at \*4 ("Nothing in the Complaint connects Decedent's death

---

[6] The Complaint never actually mentions COVID-19 test kits; it merely alleges that the testing policies at The Heights Facility were insufficient.

1    to the administration to, or use by, her of any mask, personal protective equipment, or any other

2    covered countermeasure"); *Reed v. Sunbridge Hallmark Health Servs., LLC*, No. CV 21-3702-

3    JFW(AGRx), 2021 WL 2633156, at *5 (C.D. Cal. June 25, 2021) ("Although Plaintiffs

4    mention certain covered countermeasures in their complaint, and allege that Defendant failed to

5    'properly enforce and enable PPE,' . . . there are no allegations linking Decedent's death to

6    the *use* of that personal protective equipment or linking Decedent's death to the *purposeful*

7    allocation of personal protective equipment to other individuals."); *Estate of McCalebb v. AG*

8    *Lynwood, LLC*, No. 2:20-cv-09746-SB-PVC, 2021 WL 911951, at *5 (C.D. Cal. Mar. 1,

9    2021 ("While Plaintiffs refer to the failure to provide adequate PPE (and training in its use),

10   this allegation is one of 19 claims of negligence in a complaint that describes overall inattention

11   rather than conscious decision-making about covered countermeasures while delivering care.").

12   Accordingly, the Court finds that this case does not allege any claim or loss related to the

13   administration or use of a covered countermeasure, and thus, does not fall within the scope of

14   the PREP Act.

15                      **2.      Covered Persons**

16          Under the PREP Act, "the term 'covered person,' when used with respect to the

17   administration or use of a covered countermeasure means . . . a program planner of such

18   countermeasure . . . [or] a qualified person who prescribed, administered, or dispensed such

19   countermeasure." 42 U.S.C. § 247d-6d(i)(2)(b)(iii)–(iv).  However, because the Court finds that

20   the administration or use of a covered countermeasure is not at stake in this case, Defendants

21   can neither qualify as a program planner nor qualified person. *See Smith*, 2021 WL 5763556, at

22   *10 (finding that Heights of Summerlin is not a "covered person" under the PREP Act because

23   "no part of plaintiffs' complaint alleges that defendants should be held liable for their use of

24   covered countermeasures").

25

1     Accordingly, even if the PREP Act was a complete preemption statute, this case does
2  not fall within the scope of its protection because the Complaint does not allege that the use of
3  covered countermeasures caused Ms. Porcaro's death and Defendants are not covered persons.
4  Therefore, complete preemption is not an avenue to federal question jurisdiction in this case,
5  the Court finds that it lacks subject matter jurisdiction, and Plaintiff's Motion to Remand is
6  granted.

7  **IV.     CONCLUSION**

8         **IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, (ECF No. 18), is
9  **GRANTED**.

10        **IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss, (ECF Nos. 5, 6,
11 10, and 31), are **DENIED as moot**.

12        **DATED** this __17__ day of February, 2022.

13
14                                              _____
15                                              Gloria M. Navarro, District Judge
                                                UNITED STATES DISTRICT COURT
16
17
18
19
20
21
22
23
24
25